IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TOWERCO 2013, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 2:22-cv-03294 |
| v. | : | |
| | : | Chief Judge Algenon L. Marbley |
| BERLIN TOWNSHIP, *et al.*, | : | |
| | : | Magistrate Judge Elizabeth P. Deavers |
| Defendants. | : | |

**OPINION & ORDER**

This matter is before the Court on the September 18, 2023, Motion to Stay Preliminary Injunction Pending Appeal and Waive Bond ("Motion to Stay") of Defendants Berlin Township Board of Trustees and Berlin Township ("Township"). (ECF No. 43).

For the reasons that follow, the Court **DENIES** the Township's Motion to Stay.

**I. BACKGROUND**

This case centers on the construction of a telecommunications tower located in Berlin Township. This Court has recited the operative facts in detail in its Order granting Plaintiff's Motion for Preliminary Injunction. (ECF No. 39). To summarize, in late 2019, Verizon Wireless ("Verizon") identified a gap in its wireless coverage of Delaware County. (ECF No. 10-2 at 3). After locating what it believed to be a suitable location for a new tower, and collaborating with the owner of the parcel, the Oletangy School District ("OSD"), Verizon and OSD signed a lease agreement in late 2021. (ECF No. 10-1 ¶ 9-12). Around the same time, Verizon retained Plaintiff TowerCo to construct the tower. (*Id.* ¶¶ 4, 6-7).

Shortly thereafter, in keeping with local zoning requirements, TowerCo notified owners of property that adjoined the site about its intention to build the proposed tower. (ECF No. 10-3 ¶

1

10). In response to concerns from constituents, the Township held a special meeting, during which residents expressed concerns about the tower's construction, including the potential adverse health effects of radio frequency emissions emanating from the tower. (*Id.* ¶ 12). The Township then notified TowerCo that it would require it to apply to the Berlin Township Zoning Commission for a conditional use permit before proceeding with construction. (*Id.*).

Instead of applying for such a permit, TowerCo sent two letters to the Township asserting that it was immune from local zoning procedures, including the conditional use permit application process, under the state immunity doctrine set forth in *Brownfield v. State*, 407 N.E.2d 1365 (Ohio 1980). (*Id.* ¶ 15-16). When TowerCo had not received a response from the Township about a month later, it applied for a building permit from the Delaware County Building Department, in which it asserted that the Township had assented to the construction of the tower. (*Id.* ¶ 17). The Delaware County Building Department issued the permit in January 2022 and TowerCo promptly began construction. (*Id.* ¶ 19). By April 2022, the tower was nearly complete. (*Id.* ¶ 22). In May 2022, the Township issued a letter to the Delaware County Building Department, explaining that it believed TowerCo had misrepresented the zoning status of the site, which caused the Building Department to issue briefly a stop work order that was later lifted. (*Id.* ¶ 21-23).

Berlin Township then filed suit in the Delaware County Court of Common Pleas in June 2022, alleging violations of Ohio law, Berlin Township's Zoning Resolution, and Delaware County Building Code, and requesting a temporary restraining order ("TRO"), and preliminary and permanent injunctions. (*Id.* ¶ 25-26). That same day, the state court granted the TRO, enjoining TowerCo from further construction of the tower. (ECF No. 27-17) In its order, the state court explained its view that the Township stood to suffer irreparable harm because the tower "may

2

negatively affect the health, safety, and welfare of Berlin Township residents and school children." (ECF No. 27-17). The TRO was later continued.

After TowerCo filed its answer and counterclaims in the state court suit, it removed the case to federal court. (ECF No. 5 ¶ 55). The parties then agreed to a joint stay that lasted through the end of August 2022. (*Id.* ¶¶ 56, 58-59). Towards the end of that period, TowerCo acquiesced to remand and voluntarily dismissed its counterclaims. It filed the suit *sub judice* with this Court on August 31, 2022, alleging, among other things, violations of the Telecommunications Act of 1996 ("TCA").

In December 2022, the state court granted the Township's "unopposed motion to consolidate its application for preliminary injunction with trial of the action on the merits," so long as TowerCo adhered to its agreement to "maintain the status quo" and "not conduct any further construction activities" related to the tower "until the Court considers and rules on the merits." (ECF No. 14-1). The court later stayed the state proceedings. The state court's injunction and stay of the proceedings remain in place to this day.

Following extensive briefing and oral argument, the Court issued its Opinion & Order ("Order") granting TowerCo's Motion for Preliminary Injunction. (ECF No. 39). The Order enjoins the Township from "preventing the completion and deployment of the cell tower" during the pendency of this action. *Id.*

One month later, the Township filed a Notice of Appeal of the Order on Motion for Preliminary Injunction (ECF No. 42) and a Motion to Stay the Court's preliminary injunction pending its appeal of the Order. (ECF No. 43). TowerCo responded to the motion (ECF No. 46), and the Township replied (ECF No. 51). The Township's motion is now ripe for review.

## II.  ANALYSIS

Federal Rule of Appellate Procedure 8(a) governs stays or injunctions pending appeal.  In determining whether to grant a stay of a preliminary injunction pending appeal, the Court must assess "the same four factors that are traditionally considered in evaluating the granting of a preliminary injunction." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991).  Because of the different procedural posture, however, these factors are considered with respect to the movant, the Township, not the party that prevailed at the preliminary injunction stage, TowerCo.  Specifically, this Court will consider: (1) the likelihood that the Township will prevail on the merits of its appeal; (2) the likelihood that the Township would be irreparably harmed absent a stay; (3) the likelihood that others would be harmed if this Court grants the stay; and (4) the public interest in granting the stay.  *Id.*  These factors are "not prerequisites," but "interrelated considerations that must be balanced together." *Tri Cnty. Wholesale Distributors, Inc. v. Labatt USA Operations Co., LLC*, 311 F.R.D. 166, 176 (S.D. Ohio 2015).  Nonetheless, "[t]he first two factors . . . are the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009).  As explained below, the Township has not met its burden and this Court denies its Motion for Stay.

### A.  Likelihood of Success on the Merits of its Appeal

As this Court explained in its earlier Order, this case presents a matter of first impression regarding how the Ohio state law *Brownfield* immunity doctrine intersects with the TCA.  The Township contends that it is likely to succeed on the merits of its appeal of TowerCo's TCA claims because: (1) there was no "final action or failure to act" by the Township that rendered TowerCo's TCA claims ripe for adjudication; (2) even if the Township did take a "final action," TowerCo's suit was not timely filed; and (3) the Township's actions did not effectively prohibit personal wireless service.  Although the bulk of the Township's motion is a "rehashing of arguments

previously rejected," *Union Home Mortg. Corp. v. Cromer*, No. 4:21CV385, 2022 WL 5174149, at *4 (N.D. Ohio Mar. 16, 2022), it does raise some specific challenges to this Court's analysis, which are addressed in turn.

1. This Court Found That TowerCo's Suit is Ripe for Adjudication and Timely Filed

    a. Berlin Township's Decision to Pursue an Injunction Constituted a "Final Action"

Under the TCA, if a telecommunications provider is "adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof" in contravention of the TCA's other provisions, it "may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction." 47 U.S.C. § 332(c)(7)(B)(v). A "final action" that triggers a provider's right to sue "'mark[s] the consummation of the agency's decision making process' and determines 'rights or obligations' or triggers 'legal consequences.'" *T-Mobile South, LLC v. City of Roswell, GA.*, 574 U.S. 293, 305 n.4 (2015). The prototypical example of a "final action" is an instance in which "a wireless provider [] has applied for a permit from a local zoning authority," and the zoning authority "either fails to act on the application or denies the application."[1] (ECF No. 39). The passage of a municipal regulation affecting the permitting or construction process for cell towers can also be a "final action." *See e.g., Upstate Cellular Network v. City of Auburn*, 257 F. Supp. 3d 309, 314-15 (N.D.N.Y. 2017).

The *Brownfield* immunity doctrine, on the other hand, is an Ohio doctrine that stems from *Brownfield v. State*, in which the Supreme Court of Ohio addressed the state's attempt to use a

---

[1] A zoning authority "fails to act" if it does not respond to a "request for authorization" within a "reasonable period of time." 42 U.S.C. § 332(c)(7)(B)(ii). The Federal Communications Commission ("FCC") has promulgated regulations specifying that "a reasonable period of time" for siting requests that do not involve collocation (the practice of deploying multiple antennae at a single site, sometimes spelled co-location) is 150 days. *In the Matter of Petition for Declaratory Ruling to clarify Provisions of Section 332(c)(7)(b)*, 24 FCC Rcd. 13994 ¶ 32 (Nov. 18, 2009) (hereinafter, "2009 FCC Order").

house situated in a single-family residential zone as a halfway house for psychiatric patients. 407 N.E.2d at 1365. There, the court rejected the state's argument that its eminent domain power was necessarily superior to the locality's zoning laws, instead holding that the state and its subdivisions only enjoy immunity from local zoning restrictions after they first make a "reasonable attempt to comply with the zoning restrictions of the affected subdivision." *Id.* at 1368 (internal citations omitted). The doctrine also applies to private entities acting "in agreement with the state and in furtherance of the identified state purpose." *GTE Wireless of the Midwest, Inc. v. Anderson Twp.*, 731 N.E.2d 201, 210 (Ohio Ct. App. 1999).

*Brownfield* immunity, according to the intermediate state appellate court, is "self-executing": if a state or state-affiliated entity has made reasonable efforts at compliance with the municipality's *substantive* land-use restrictions, but compliance would defeat essential government objectives, then it "may proceed unless enjoined by a court of competent jurisdiction." *See Taylor v. State Dep't of Rehab. & Corr.*, 540 N.E.2d 310, 316 (Ohio Ct. App. 1988). In other words, once an entity asserts immunity, it may proceed until its assertion is challenged and rejected in court. *Id.* This is because the entity is only required to attempt to comply with the locality's *substantive* land-use provisions, not its zoning *procedures*. *See id.* at 314-15. Of course, such a self-executing immunity doctrine is unusual, but the Attorney General of Ohio has published two advisory opinions adopting this interpretation. *See* Op. Ohio Att'y Gen. 2001-002; Op. Ohio Att'y Gen. 2008-022.

Since TowerCo partnered with a state entity—OSD—and asserted *Brownfield* immunity from the Township's zoning procedures, this Court was tasked with reconciling these two frameworks in its earlier Order. This Court concluded that the Township's "decision to pursue an injunction in state court constituted a 'final action'" that triggered the 30-day clock for TowerCo

6

to file suit because, in an instance like this, "the only way for a local zoning authority to stop construction is to sue the provider for an injunction." (*See* ECF No. 39 at 12-18).

In its Motion for Stay, the Township again presses its earlier argument that there can be no "final action" without an application for a permit to construct the tower. (ECF No. 43 at 4-5). But, as this Court concluded previously, accepting that position "would render the *Brownfield* doctrine a nullity" because the *Brownfield* doctrine allows a state-affiliated entity to assert immunity from complying with local zoning procedures. (ECF No. 39 at 16). The Township makes no argument that convinces this Court otherwise.

The Township also argues that this Court effectively—and preemptively—determined that TowerCo was entitled to *Brownfield* immunity in its earlier Order, although this Court stated that it was not deciding whether *Brownfield* immunity should in fact be applied to TowerCo. (ECF No. 43 at 6). This argument misunderstands the *Brownfield* doctrine's admittedly peculiar "self-executing" nature. By virtue of asserting *Brownfield* immunity, TowerCo was permitted to proceed until enjoined by a court of competent jurisdiction. But, down the road, a court may still determine that TowerCo is not entitled to *Brownfield* immunity and, therefore, must comply with the Township's zoning procedures if it wishes to continue its construction activities.

In sum, the Township provides no reason in its Motion for this Court to conclude that the Township's filing of the state court lawsuit was not a "final action" that triggered TowerCo's right to sue under the TCA.

b.  *TowerCo's Lawsuit was Timely Filed*

Having concluded that the Township's filing of its state court lawsuit was a "final action" that triggered TowerCo's right to sue, this Court now considers whether TowerCo's lawsuit in this Court was timely filed. Under the TCA, a zoning authority's "final action" marks the beginning

7

of a 30-day time period in which an adversely affected wireless provider has a right to sue. *See* 47 U.S.C. § 332(c)(7)(B)(v). The Township's state court lawsuit was filed on June 21, 2022. (*See* ECF No. 10-3 ¶ 26). TowerCo did not file the instant lawsuit until August 31, 2022, more than 30 days later. In its earlier Order, however, this Court concluded that the 30-day clock was tolled for the duration of the parties' joint stay of the state court suit during which the parties sought to reach an agreement. (ECF No. 39 at 18). The parties entered into the stay on July 15, 2022 and the negotiations fell apart by late August 2022; the state case was reactivated on September 8, 2022. (ECF No. 10-3 ¶ 27). As a result, TowerCo's federal lawsuit was filed within 30 days of the Township's state court lawsuit, after accounting for the stay.

In concluding that the TCA's 30-day clock should be tolled for the duration of the state court stay, this Court looked to the 2009 FCC Ruling mentioned above. There, the FCC discussed tolling of the "reasonable period of time" that a zoning authority has to respond to a request for authorization in a scenario "where the parties are working cooperatively toward a consensual resolution" regarding a facility siting application. 2009 FCC Ruling ¶ 49. Ordinarily, a zoning authority has 90 or 150 days to respond to a request for authorization, and therefore, a wireless provider has 120 or 180 days to bring suit. *Id.* The FCC explained, however, "that a rigid application of this cutoff" to cases where the parties are working together to reach an agreement would be "contrary to both the public interest and Congressional intent." *Id.* As a result, the FCC concluded that "a 'reasonable period of time' may be extended beyond the 90 or 150 days by mutual consent of the personal wireless service provider and the State or local government.'" *Id.*

The Township takes issue with this Court's reference to the FCC's 2009 Ruling. The Township argues that the FCC's opinion is wholly inapplicable because: (1) the FCC only addressed extensions of the 90 or 150-day "reasonable period of time" for a zoning authority to

8

reach a decision on a siting application, not the 30-day clock for a wireless provider to file suit; and (2) the FCC only permitted tolling if there was mutual consent of the parties, which the Township asserts there was not here.

The Township's observations about the context and content of the FCC Ruling are correct, but they do not defeat its relevance here. Because the instant context—in which a state-affiliated wireless provider is immune from local zoning ordinances and a state court lawsuit is the "final action"—is unique, this Court is not constrained by the precise context in which the FCC Ruling arose. Instead, it considers the spirit of the FCC's analysis. In the state court litigation, the parties entered into a joint—or "mutual"—stay with the explicit intention of using the time to reach an agreement. (*See* ECF No. 15-1). Although this mutually agreed-upon pause, irrefutably designed for the parties to "work cooperatively toward a consensual resolution" took place after the locality's "final action," not before, the purpose of the pause remains the same. And as the FCC explained, a "rigid application" of a cut-off when parties are working towards resolution is "contrary to both the public interest and Congressional intent." 2009 FCC Ruling ¶ 49.

Nor does the fact that the record does not contain evidence of an explicit agreement to toll the 30-day TCA clock convince this Court that the clock should not be tolled. Just because the FCC Ruling provides one situation in which the 30-day clock can be tolled does not mean that it outlines the only situation in which this Court can concluded that tolling is justified. Here, the mutually agreed upon stay indicated to TowerCo that the Township hoped to reach a compromise. But, after the 30-day clock had expired, the Township explained that it was unwilling to resolve the issue, unless TowerCo would proceed through the municipal zoning process and remove its tower in the meantime. (See ECF Nos. 10-5 at 89, 32 at 9). Simply put, it would be inequitable to conclude that TowerCo forfeited its right to bring this suit by agreeing to a joint stay during

9

which the parties sought a mutually agreeable resolution.  As a result, this Court concludes that the 30-day time period in which TowerCo had to file suit was appropriately tolled during the joint stay.

    2.   This Court Found That Berlin Township's Decision to Pursue an Injunction Effectively Prohibited the Provision of Personal Wireless Services

In its earlier Order, this Court concluded that the Township's lawsuit asking the state court to enjoin TowerCo constituted "[t]he regulation of the placement, construction, and modification of personal wireless service facilities" that "prohibit[ed] or ha[d] the effect of prohibiting the provision of personal wireless services" in contravention of § 332(c)(7)(B)(i)(II).  As a threshold matter, this Court found that the Township's initiation of the state court lawsuit was a form of "regulation" that sounded in the statute since it was an "attempt '[t]o control, govern, or direct [the provision of wireless services], esp. by means of regulations or restrictions.' *Regulate*, OXFORD ENGLISH DICTIONARY (3rd ed. 2009)."  (ECF No. 39 at 21).  The Township argues now that this Court impermissibly read the word "attempt" into the statute, and accordingly, that the statute does not cover situations like this one in which the local entity only *attempted* to regulate.  (ECF No. 46 at 10-11).  In other words, the Township argues that it was the state court's entry of the TRO that regulated wireless service facilities, whereas the Township's motion for an injunction was merely an *attempt* to regulate. (*Id.*).  But again, the Township fails to appreciate the unique need to accommodate TowerCo's assertion of *Brownfield* immunity into this analysis.  As discussed above, once TowerCo asserted "self-executing" *Brownfield* immunity, the Township could only stop its progress through requesting an injunction.  Because of this unusual context, this Court remains of the view that the Township's request for an injunction in state court amounted to regulation of personal wireless service facilities.

Turning to whether the state court lawsuit "prohibit[ed] or ha[d] the effect of prohibiting the provision of personal wireless services," a single denial can constitute such a prohibition, so long as the wireless provider can show that: (1) there was a significant gap in coverage; and (2) the provider—here, Verizon, who eventually obtained TowerCo's services—made some inquiry into the feasibility of an alternate location. *T-Mobile Cent., LLC v. Charter Tp. of W. Bloomfield*, 691 F.3d 794, 807 (6th Cir. 2012). This Court previously concluded that TowerCo was substantially likely to succeed on the merits of both. (ECF No. 39 at 211-26). In its instant Motion, the Township largely reiterates its earlier arguments, which, having been addressed previously, merit little further discussion. As this Court explained in its previous order: (1) TowerCo has presented sufficient evidence at this preliminary stage to establish a substantial likelihood that it will be able to show a significant gap in coverage; and (2) the fact that Verizon engaged in an iterative process with OSD suggests that Verizon "conducted a meaningful search for alternatives prior to selecting the site." (ECF No. 39 at 21-26).

To summarize, the Township has provided no reason for this Court to conclude that the Township—and not TowerCo—is likely to succeed on appeal.

### B. Irreparable Harm to Berlin Township

The Township asserts that it will suffer irreparable harm absent a stay. (ECF No. 43 at 15). To evaluate the harm that will occur if a stay is not granted, the Court must assess: "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Griepentrog*, 945 F.2d at 154 (internal citation omitted). To be irreparable, "the harm alleged must be both certain and immediate, rather than speculative or theoretical." *Id.* To "substantiate" its claim of irreparable injury, the Township must "provide some evidence that the

harm has occurred in the past and is likely to occur again." *Id.* (internal citation omitted). The Township fails to do so.

The Township points to the TRO order in which the state court found that Berlin Township stood to suffer irreparable harm because the tower may negatively affect the health, safety, and welfare of the Township residents, particularly children who attend the schools nearby the tower site. (*See* ECF No. 46 at 15). But as this Court noted in its earlier Order, the radio frequency concerns to which the state court referred are impermissible grounds for regulation of cell towers under the TCA. *See* 47 U.S.C. § 332(c)(7)(B)(iv) (prohibiting State or local governments from regulating personal wireless service facilities that are otherwise in compliance with FCC regulations "on the basis of the environmental effects of radiofrequency emissions"). This argument remains a non-starter.

The Township's argument that this Court's injunction may force it to jeopardize its legal position in state court, however, merits more consideration. The state court litigation is currently stayed, but the Township argues that should the state court lift the stay, the Township will be put in the "impossible position" of forfeiting its rights in state court or violating this Court's order. (ECF No. 46 at 15). This Court agrees that such a bind could cause the Township harm. But the Township has not shown that the harm is certain or immediate. Indeed, it is pure speculation that the state court will decide to lift the stay—presumably over objections that the Township would lodge at the time.[2]

---

[2] Additionally, any argument that this Court's preliminary injunction should be interpreted as enjoining state court proceedings is likely foreclosed by the Anti-Injunction Act, which explains that generally, "[a] court of the United States may not grant an injunction to stay proceedings in a State court." *See* 28 U.S.C.A. § 2283. Because the parties have not briefed this issue, and its resolution is not necessary to consideration of the instant Motion, this Court declines to resolve it.

Thus, the Township "fails to meet its burden of proving the two 'most critical' factors required of our balancing test." *Dodds v. United States Dep't of Educ.*, 845 F.3d 217, 221 (6th Cir. 2016).

### C. Harm to Others

The third factor this Court considers is whether others will be harmed should it grant the stay. *Griepentro*, 945 F.2d at 153. The Township argues that TowerCo will not be harmed by a stay of the preliminary injunction for three reasons: (1) the financial harm that TowerCo alleges is not a permissible consideration; (2) TowerCo cannot show that it has been harmed through a loss of customer goodwill; and (3) TowerCo already agreed not to conduct any more construction on the tower until a decision on the merits in either court. The financial harm and customer goodwill arguments were both considered in this Court's earlier Order, and they were accepted and rejected, respectively. (ECF No. 39 at 28 n.12, 28-29). Seeing that the Township largely reiterates those arguments here, this Court incorporates its earlier analyses and conclusions.

The Township's third argument, respecting TowerCo's agreement to pause construction until a decision on the merits has been reached in either the state or federal case, is persuasive. As a condition for the state court consolidating the Township's requested preliminary injunction hearing with its adjudication on the merits, TowerCo promised to maintain the status quo—i.e., not engage in further construction—until either the state court or this Court reaches a decision on the merits. (ECF No. 14-1). As the Township points out, it makes little sense to conclude that TowerCo would be harmed by a stay of this Court's injunction pending appeal when TowerCo already agrees to not recommence construction. TowerCo mounts no argument in response in its stay briefing, and to the extent that the earlier arguments it incorporates are responsive to this point, they are difficult to parse. Nonetheless, it appears that TowerCo concedes that it agreed to "not

13

move forward with construction until there is a decision on the merits from either the state or federal court." (ECF No. 34 at 19). As a result, this Court is convinced that a stay of the injunction would not harm others, including TowerCo.

### D. The Public Interest

In its earlier Order, this Court concluded that the public interest would be served by an injunction because both TowerCo and the Township agree that completion of the tower will benefit residents of the Township with respect to cellular service quality. (ECF No. 39 at 31). In the instant Motion, however, the Township insists that any actions it takes with respect to zoning, including its state court litigation, are taken for the benefit of the public health, safety, and welfare, and it gestures vaguely towards portions of the Ohio Code that authorize municipalities to enact zoning regulations in the public interest. (ECF No. 46 at 18). This Court is unpersuaded that the Township's general authority to regulate indicates that a stay here would be in the public interest.

### III. CONCLUSION

Even though the Township has shown that others are unlikely to be harmed by an entry of a stay, that showing must be balanced against the Township's failure to show (1) that it has a likelihood of success on appeal, (2) that it will suffer irreparable harm, or (3) that a stay would be in the public interest. This court concludes that the latter three factors, two of which are most critical to the analysis, outweigh the first, and accordingly **DENIES** the Township's Motion to Stay.

**IT IS SO ORDERED.**

ALGENON L. MARBLEY
UNITED STATES DISTRICT JUDGE

**DATED: October 25, 2023**